UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v. 3:25-CR-0500 (GTS)

MUHAMMAD M. ABDULLAH,

Defendant.

---

APPEARANCES: OF COUNSEL:

OFFICE OF THE U.S. ATTORNEY FOR THE N.D.N.Y.
Counsel for the Government
15 Henry Street
319 Federal Building
Binghamton, NY 13901

KRISTEN LEE GRABOWSKI, ESQ.
Assistant United States Attorney

HON. ERIC K. SCHILLINGER
Federal Public Defender for the N.D.N.Y.
Counsel for Defendant
4 Clinton Square, 3rd Floor
Syracuse, NY 13202

COURTENAY K. McKEON, ESQ.
ANNE L. LaFEX, ESQ.
Assistant Federal Public Defenders

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this criminal proceeding against Muhammad M. Abdullah ("Defendant"), is Defendant's motion to suppress evidence discovered in the trunk of his car pursuant to Fed. R. Crim. P. 12(b)(3)(C). (Dkt. No. 23.) For the reasons set forth below, Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Relevant Procedural History

For the sake of brevity, the Court will not recite in detail the events giving rise to the

criminal charge against Defendant, the nature of that charge, and the pre-motion procedural history of this action, because this Decision and Order is intended primarily for the review of the parties, who have demonstrated an adequate understanding of those facts.

**B. Parties' Arguments on Defendant's Motion to Suppress**

**1. Defendant's Memorandum of Law**

Generally, in his motion to suppress, Defendant asserts three arguments. (Dkt. No. 23, Attach. 1.) First, Defendant argues, he has standing to challenge the installation and use of the tracking device because he had keys to the vehicle to which the device was attached (a Buick Lacrosse), permission from the owner to use the vehicle, and was driving the car as it was being tracked. (*Id*. at 5.)

Second, Defendant argues that the warrant to place a tracking device on a vehicle frequently operated by Defendant was not supported by probable cause for the following reasons: (a) courts have generally found probable cause to install a tracking device where the warrant application discusses controlled buys involving the targeted individual or vehicle and/or describes intercepted communications tying the targeted individual or vehicle to drug sales; (b) here, the tracking warrant application contained no such information; (c) rather, the only information in the application tying Defendant or the Buick Lacrosse to the drug trade were statements from a source of information ("SOI") and a summary of Defendant's criminal history; (d) however, officers did not corroborate the SOI's information by conducting controlled buys, observing Defendant or the Buick Lacrosse engage in drug activity, or intercepting communications; and (e) the only "corroborating" information regarding the SOI's tip that Defendant would "possibly" be traveling to Pennsylvania in a rental car to pick up controlled

substances are (i) the fact that, on one date, a license plate reader showed Defendant's rental car "heading westbound in the direction of interstate 86 which leads to interstate 81 South toward PA," and (ii) the fact that, on another date, a license plate reader showed the Buick Lacrosse in the vicinity of Albany (neither of which corroborates the tip). (*Id*. at 5-9.)

Third, Defendant argues that the subsequent search of his vehicle's trunk (which was warrantless because the tracking warrant did not contain a search warrant) violated the Fourth Amendment because no exception to the warrant requirement applies for the following reasons: (a) the search did not qualify as a "consent search," because it is undisputed that Defendant consented only to the search of his person; (b) the search was not justified by the inventory exception to the warrant requirement, because such searches are generally conducted at the police station in accordance with established inventory procedures (which this search was not), and such searches must be conducted in good faith for purposes other than solely investigatory purposes (which, again, this search was not); and (c) the search was not justified by the automobile exception to the warrant requirement, because that exception requires probable cause to believe that the vehicle contains contraband, but here there was no such probable cause (in that there is no evidence that officers observed Defendant obtain any contraband or place it in the vehicle, that Defendant made any statements during the stop indicating that the vehicle contained contraband, or that the K9 unit alerted the officers to presence of contraband in the vehicle). (*Id*. at 9-11.)

**2. Government's Opposition Memorandum of Law**

Generally, in its opposition, the Government asserts six arguments. (Dkt. No. 26.) First, the Government argues that, as a threshold matter, Defendant lacks standing to challenge

the installation and use of the tracking device, because he cannot establish lawful possession of the Buick Lacrosse given that he was an unlicensed driver of it at the time (his license having been suspended/revoked) and thus did not have a reasonable expectation of privacy in the vehicle as its sole occupant, like the unauthorized driver of a rental car in *United States v. Lyle*, 919 F.3d 716 (2d. Cir. 2019). (*Id*. at 25-26.)

Second, the Government argues that, even if Defendant has standing, the Court should deny his suppression motion to the extent that it is based on the tracking warrant, because the tracking warrant was a valid search warrant issued on probable cause, which officers could rely on in good faith, given that (a) the SOI was a face-to-face source rather than a "tipster," (b) the SOI's information was based on his or her firsthand knowledge, and (c) the SOI's information was sufficiently corroborated by license plate readers, Defendant's relevant criminal history, and the affiant agent's knowledge about practices engaged in by those involved in drug trafficking. (*Id*. at 26-28.)

Third, the Government argues that, even if this Court were to find the warrant infirm, exclusion of evidence of the car stop would be unjustified, because nothing in the warrant would preclude a law enforcement officer from believing in good faith that the warrant was properly issued by Chief U.S. Magistrate Judge Therese Wiley Dancks. (*Id*. at 28-29.)

Fourth, the Government argues that the Court should deny Defendant's suppression motion to the extent it is based on the search of the vehicle, because the evidence was discovered during a lawful inventory search and as part of the officers' community caretaking function for the following reasons: (a) the officers' inventory search substantially, if not fully, complied with New York State Police Policy 30B7, because the Buick Lacrosse fit the definition of both a

vehicle that was "abandoned" (given that it lacked a licensed driver) and a vehicle that was "towed as a result of criminal activity" (given Defendant's misdemeanor offense of Aggravated Unlicensed Operation 3rd degree); (b) Policy 30B7 is reiterated in New York State Police Policy 31B4, which provides that, for an arrest of a person in a vehicle, if the vehicle will be impounded, the officers should "[s]ecure the vehicle and inventory its contents"; and (c) in any event, police were within their authority to tow and search Defendant's vehicle under the community caretaking function, because Defendant was not able to lawfully operate the vehicle, and no one was available to remove it from the scene, which was a busy multi-lane highway. (*Id*. at 29-30.)[1]

Fifth, the Government argues that, even if the Court were to find that there was not a lawful inventory search, the Court should deny Defendant's suppression motion to the extent that it is based on the search of the vehicle, because there was probable cause to search the vehicle based on the following totality of the circumstances: (a) law enforcement was aware of Defendant's pattern of drug trafficking and had detailed information that suggested that he was engaging in the same conduct; (b) Defendant engaged in conduct consistent with drug trafficking immediately before the stop when he traveled approximately 1 and ½ hours, stopped for less than ten minutes and then turned around and returned the same path; (c) Defendant had a criminal history related to drug trafficking and, when police made contact with him, exhibited signs of extreme nervousness including shaking; (d) Defendant was operating the vehicle without authority to drive, the vehicle did not belong to him, and it had an overwhelming odor of air fresheners, often consistent with drug traffickers attempting to mask controlled substances; (e)

---

1 The Government also argues that, once police discovered the suspected methamphetamine in the trunk, the "automobile exception" permitted them to conduct a warrantless search without regard to the inventory search doctrine. (Dkt. No. 26, at 29.)

Defendant admitted contact with individuals in Philadelphia, a known source location of drugs; and (f) Defendant provided statements inconsistent with known facts, including providing a false location that he came from. (*Id*. at 30-31.)

Sixth, the Government argues that, even if the Court were to find that the search of the vehicle violated the Fourth Amendment, the Court should not exclude evidence from the vehicle due to the good-faith doctrine for the following reasons: (a) Defendant was legally stopped after committing multiple traffic infractions (including traveling at approximately 78 mph in a 65-mph zone); (b) the officers' investigation revealed that Defendant could not lawfully operate the vehicle (and there were no other occupants operating the vehicle); (c) the vehicle was subject to search according to the automobile exception to the warrant requirement and an applicable inventory search policy; and (d) there is no indication in this case that officers deliberately or recklessly violated Defendant's constitutional rights. (*Id*. at 31-32.)

**3. Defendant's Reply Memorandum of Law**

Generally, in his reply memorandum of law, Defendant asserts four arguments. (Dkt. No. 30.) First, Defendant argues that he has standing to challenge the tracking warrant and the warrantless search of the vehicle for the following reasons: (a) the case relied on by the Government, *United States v. Lyle*, 919 F.3d 716 (2d. Cir. 2019), turned on the fact that the defendant was both an unlicensed driver and an unauthorized user of the vehicle; (b) here, only one of the two factors relied upon in *Lyle* was present (i.e., Defendant being an unlicensed driver), because Defendant had permission from the owner of the vehicle; and (c) in such circumstances, *Lyle* has been distinguished by at least two published district court cases from within this Circuit (specifically, *United States v. Zimmerman*, 480 F. Supp. 3d 446, 452

[E.D.N.Y. 2020], and *United States v. Gladden*, 394 F. Supp. 3d 465, 481 [S.D.N.Y. 2019]). (*Id*. at 2-3.)

Second, Defendant argues that the application of the tracking warrant did not establish probable cause for the following reasons: (a) the SOI was not reliable, because he/she had ample motive to falsify the information they provided to law enforcement, for the reasons set forth in a separate sealed filing; and (b) despite being aware of the SOI's dubious motives, law enforcement made only cursory efforts to corroborate the information provided by the SOI. (*Id*. at 4-5.)

Third, Defendant argues that all evidence discovered as a result of the tracking warrant, including the methamphetamine discovered in the vehicle's trunk, must be suppressed to remedy the Fourth Amendment violation for the following reasons: (a) the Government argues that the evidence should not be suppressed because the good-faith exception to the exclusionary rule applies; (b) however, the exclusionary rule would not apply where (i) where the issuing magistrate has been knowingly misled, (ii) where the issuing magistrate wholly abandoned his or her judicial role, (iii) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable, and (iv) where the warrant is so facially deficient that reliance upon it is unreasonable; (c) here, the first circumstance is present, because the affidavit omitted key information about the SOI's motives; and (d) the third circumstance also is present, because the only information that the supporting affidavit contained tying Defendant or the vehicle to drug trafficking came from the SOI, but the SOI was not reliable, and law enforcement did not sufficiently corroborate the SOI's information. (*Id*. at 5-6.)

Fourth, Defendant argues that the warrantless search of the vehicle was not excused by

any exception to the warrant requirement for the following reasons: (a) the community caretaking function does not authorize searching a vehicle, which must be justified by some other exception to the warrant requirement such as the inventory exception; (b) the Government has not met its burden of showing that the inventory exception to the warrant requirement applies, because neither Investigator Joseph Andrews nor Trooper Robert B. Gregory has filed an affidavit or declaration stating that the officers followed New York State Police Policy 30B7; and (c) there was not probable cause to search the trunk of the vehicle because (i) law enforcement would not have had the information about Defendant's 1.5 hour trip and abrupt return but for the unlawful issuance and execution of the tracking warrant, (ii) hundreds of thousands of people have contact with individuals in Philadelphia every day without engaging in drug trafficking activity, and (iii) Defendant denies that his hands were shaking during the stop. (*Id*. at 6-9.)

**4. Evidentiary Hearing on Defendant's Motion**

At Defendant's request, the Court held an evidentiary hearing on his motion on July 30, 2026. (Dkt. No. 47.) During that hearing, the Court received into evidence seven exhibits (specifically, New York State Police body camera footage, Defendant's driver abstract, New York State Police inventory policies, Defendant's criminal history, uniform traffic tickets issued to Defendant, Defendant's vehicle inventory report, and photographs of contraband seized from Defendant's car) and heard testimony of two witnesses (specifically, New York State Police Investigators Robert Gregory and Joseph Walp), each of whom was cross-examined. (*Id*.) Following the hearing, the Court permitted the parties to submit supplemental briefs. (*Id*.)

**5. Defendant's Arguments in His Post-Hearing Brief**

Generally, in his post-hearing brief, Defendant asserts three arguments. (Dkt. No. 49.) First, Defendant argues, the application for the tracking warrant did not establish probable cause to believe that Defendant or the vehicle were connected with drug trafficking, because (a) the only information in the affidavit connecting Defendant to drug activity came from a single informant, (b) the reliability of the informant, therefore, was highly suspect in that that informant provided information to law enforcement "in hopes that his/her cooperation will be taken into consideration for pending felony charges," and (c) despite the obvious problems with the informant's reliability, the application does not describe adequate corroboration of the informant's information. (*Id*. at 2-3.)

Second, Defendant argues, suppression is the remedy for the Fourth Amendment violation, because (a) the traffic stop occurred because of information obtained from the tracking device, (b) without the tracking device, law enforcement would not have known when Defendant traveled south to Pennsylvania, (c) as a result, the methamphetamine recovered from the trunk of the Buick was the fruit of the poisonous tree, and (d) the Government has not met its burden of showing that the good-faith exception to the exclusionary rule applies. (*Id*. at 3-5.)

Third, Defendant argues, the warrantless search of the vehicle was not excused by any exception to the warrant requirement for the following reasons: (a) there was not probable cause to search the vehicle but only founded suspicion; and (b) the community caretaking function and inventory exception do not justify the warrantless search because the officers engaged in the type of "ruse for a general rummaging in order to discover incriminating evidence" that Supreme Court precedent prohibits. (*Id*. at 5-9.)

### 6. The Government's Arguments in Its Post-Hearing Brief

Generally, in its post-hearing brief, the Government asserts five arguments. (Dkt. No. 51.) First, the Government argues, the tracking warrant was a valid search warrant issued on probable cause, given (a) the totality of the circumstances test, and (b) the specificity and/or corroboration of details provided by the face-to-face informant. (*Id.* at 1-2.)

Second, the Government argues, even if the tracking warrant was infirm, law enforcement could rely on it in good faith, because (a) the Government need not have elicited hearing testimony on the good faith exception given the information provided within the four corners of the agent's affidavit, and (b) based on that information, the affiant agent fully apprised Chief Magistrate Judge Dancks of the dynamics between Defendant and the informant. (*Id.* at 2-3.)

Third, the Government argues, the impound and inventory of the vehicle was authorized by the policies of the New York State Police and, also, the community caretaking function. (*Id.* at 3-4.)

Fourth, the Government argues, additionally, law enforcement had probable cause to search the vehicle based on the totality of the circumstances. (*Id.* at 4-5.)

Fifth, the Government argues, even if the search violated the Fourth Amendment, exclusion of evidence is inappropriate based on the good faith exception. (*Id.* at 5.)

## II. GOVERNING LEGAL STANDARDS

### A. Standard Governing a Motion to Suppress

Generally, on a motion to suppress evidence, the defendant must identify with specificity the evidence that he believes should be suppressed, and to identify the specific bases for suppression. *See United States v. Elliott*, 363 F. Supp.2d 439, 444 (N.D.N.Y. 2005) (Sharpe, J.)

("The moving party must specifically articulate the relief requested and must set forth a factual basis which, if proven true, would entitle the moving party to the relief requested."); *accord, United States v. Burnett*, 793 F. Supp.2d 530, 531 (N.D.N.Y. 2011) (Sharpe, J.). Generally, "[i]n order to raise a factual issue concerning the validity of a seizure such that a hearing is required, the defendant must support his claim with an affidavit based on personal knowledge." *United States v. Ruggiero*, 824 F. Supp. 379, 393-94 (S.D.N.Y. 1993), *aff'd sub nom. United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995) (quoting *United States v. Vasta*, 649 F.Supp. 974, 986 [S.D.N.Y.1986]); *see also United States v. Gillette*, 383 F.2d 843, 848 (2d Cir.1967) ("The affidavit submitted for appellant is insufficient in that it does not, for example, allege personal knowledge on the part of appellant's attorney; accordingly, there was no factual issue to be resolved and the denial of a hearing was correct.").[2] However, "[a] hearing [on a motion to suppress] will be scheduled if the defendant and the government agree that one is necessary." *Burnett*, 793 F. Supp.2d at 532 (citing N.D.N.Y. L.R. Crim. P. 12.1[e]).

In considering a motion to suppress, "the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 United States 667, 679 (1980) (citing *United States v. Matlock*, 415 U.S. 164, 172-74 [1974]; *Brinegar v. United States*, 338 U.S. 160, 172-74 [1949]; Fed. R. Evid. 104[a], 1101[d][1]).

---

[2] *See, e.g., United States v. Jenkins*, 11-CR-0602, 2012 WL 12952811, at *3 (N.D.N.Y. Aug. 24, 2012) (Suddaby, J.) ("[I]n addition to the Local Rules of Criminal Practice for this Court, courts in the Northern District of New York have made it clear that motions to suppress require a supporting affidavit that is based on personal knowledge. Here, Defendant's motion does not meet this requirement because his attorney's affirmation does not contain facts, which if true, would result in suppression of the evidence obtained from Defendant's devices.") (internal citations omitted); *United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y.1989) ("[T]he defendant must show 'that disputed issues of material fact exist before an evidentiary hearing is required' . . . . The required showing must be made by an affidavit of someone with personal knowledge of the underlying facts.").

Similarly, "the Confrontation Clause does not attach to pretrial suppression hearings." *United States v. Shaw*, 16-CR-0642, 2017 WL 1380598, at *7 (S.D.N.Y. Apr. 13, 2017). Finally, the standard of proof at such a hearing is a preponderance of the evidence. *See United States v. Miller*, 382 F. Supp.2d 350, 361 (N.D.N.Y. 2005) (Sharpe, J.) ("In Fourth and Fifth Amendment litigation … the standard of proof is … proof by a preponderance of the evidence.") (citing *United States v. Matlock*, 415 U.S. 164, 177 [1974]).

**B. Standard Governing Inventory Searches of Impounded Vehicles**

Police may conduct an inventory search of an impounded vehicle. *South Dakota v. Opperman*, 428 U.S. 364, 368-369 (1976). "[W]hen police 'take a vehicle into custody, they may search and make an inventory of its contents without need for a search warrant and without regard to whether there is probable cause to suspect that the vehicle contains contraband or evidence of criminal conduct.'" *United States v. Williams*, 930 F.3d 44, 53 (2d. Cir. 2019) (quoting *United States v. Lopez*, 547 F.3d 364 (2d. Cir. 2008)). "Such a search is not done to detect crime or to serve criminal prosecutions. It is done for quite different reasons: (1) to protect the owner's property while it is in police custody; (2) to protect the police against spurious claims of lost or stolen property; and (3) to protect the police from potential danger." *Lopez*, 547 F.3d at 369.

When conducing an inventory search, police must act pursuant to "standardized criteria" or "established routine" to prevent an inventory search from becoming "a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). "The policy or practice governing inventory searches should be designed to produce an inventory." *Wells*, 495 U.S. at 4. However, courts do not require rigid compliance with an inventory policy. "Nothing

in [the Supreme Court's inventory search decisions] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375 (1987). Similarly, the Second Circuit has explained as follows:

> While the Supreme Court referred to the need for a standardized policy, we do not think the Court meant that every detail of search procedure must be governed by a standardized policy. We doubt, for example, that the Court intended a requirement of standardized policy as to the order in which different parts of the car are searched, or whether officers performing the search need to report the results on a standardized form, or whether the search should be conducted by the officers responsible for the impoundment decision. A standardized policy governing those questions would do nothing to safeguard the interests protected by the Fourth Amendment.

*Lopez*, 547 F.3d at 371.

Notably, when law enforcement, acting in good faith, conduct an inventory search of a vehicle pursuant to standard policy, the search complies with the Fourth Amendment even if law enforcement suspected from the outset that the vehicle may contain evidence of a crime. The Second Circuit has noted as follows:

> Under the Supreme Court's precedents, if a search of an impounded car for inventory purposes is conducted under standardized procedures, that search falls under the inventory exception to the warrant requirement of the Fourth Amendment, notwithstanding a police expectation that the search will reveal criminal evidence. If good faith is a prerequisite of an inventory search, the expectation and motivation to find criminal evidence do not constitute bad faith.

*Id.* at 372.

### C. Standard Governing the Automobile Exception to the Search-Warrant Requirement

A well-established exception to the warrant requirement is the "automobile exception."

*United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010). Pursuant to this exception, law enforcement officers are permitted to conduct a warrantless search of a mobile vehicle where there is probable cause to believe that the vehicle contains contraband. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam). "Where the probable cause upon which the search is based 'extends to the entire vehicle,' the permissible scope of a search pursuant to this exception included 'every part of the vehicle and its contents [including all containers and packages] that may conceal the object of the search.'" *Navas*, 597 F.3d at 497 (quoting *United States v. Harwood*, 998 F.2d 91, 96 (2d Cir. 1993) [alteration in original]); *California v. Acevedo*, 500 U.S. 565, 580 (1991).

**III. ANALYSIS**

The Court begins its analysis by explaining that, in addition to carefully reviewing the seven exhibits received into evidence at the evidentiary hearing on Defendant's motion, the Court has carefully evaluated each of the two hearing witnesses' credibility under the totality of circumstances, including factors such as (1) their demeanor, body language, mannerisms, tone of voice, facial expressions, and eye contact, and (2) the internal consistency and corroborated nature of their statements. *Cf. Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir. 1996) ("[W]e must accord great deference to the trial court's findings regarding credibility because the trial judge is in the best position to evaluate a witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says.").

After carefully considering all of this evidence, the Court finds merit to each of the arguments offered by the Government in its memoranda of law. *See, supra,* Parts I.B.2. and

I.B.6. of this Decision and Order. As a result, the Court denies Defendant's motion for each of the numerous alternative reasons offered by the Government. *Id*. To those reasons, the Court adds four points (which are intended to supplement, and not supplant, the Government's reasons).

**A. Whether Defendant Has Standing to Challenge the Warrant for the Tracking Device**

Regarding whether Defendant has standing to challenge the installation and use of the tracking device, the only evidence adduced by Defendant that he had permission to use the vehicle from its owner (for purposes of the unauthorized-driver factor set forth in *United States v. Lyle*) is his own declaration testimony that "[f]rom about September 2025 until the time of my arrest in December 2025, I had the owner's permission to drive the 2018 Buick Lacrosse that I was driving on the day of my arrest." (Dkt. No. 23, Attach. 2, at ¶ 3.) However, Defendant declined to testify at the suppression hearing. (*See generally* Dkt. No. 47 [Hrg. Tr.].)

Usually, under such circumstances, a self-serving declaration is disregarded during the assessment of evidence.[3] One rationale for this practice is the fact that, when a declarant refuses to subject himself to cross-examination, the Court cannot form an opinion as to his or her credibility.[4] Here, the Court can find no reason to depart from courts' general practice of

---

[3] *See, e.g., United States v. Polanco*, 37 F.2d 262, 264 & n.4 (S.D.N.Y. 1999) ("In seeking to vindicate rights under the Fourth or Fifth Amendments, a defendant is required to submit a sworn affidavit in order to obtain a suppression hearing. . . . Having served this purpose, the affidavit effectively drops from sight, since it is rarely, if ever, considered by a judge in assessing the evidence at the suppression hearing. . . . [T]he defendant, not wishing to expose himself to cross-examination about the underlying offense, rarely takes the stand at the suppression hearing. . . . [I]n practice, the self-serving affidavit of the moving defendant is usually disregarded if he declines to testify at the hearing.").

[4] *See, e.g., United States v. Bess*, 16-CR-0156, 2018 WL 4627136, at *3 (W.D.N.Y. May 15, 2018) ("The Court notes that Bess' affidavit . . . contradicts TFO Forsberg's testimony in certain respects, but Bess did not testify at the suppression hearing and was not subject to cross

disregarding such self-serving declaration testimony. The Court adds only that, in his declaration, Defendant does not even bother to identify the owner of the vehicle by name (Muhammad Hassan Ramen), giving the Court even less reason to believe him. (Dkt. No. 23, Attach. 2, at ¶ 3.)

### B. Whether the Affidavit in Support of Tracking Warrant Was Supported by Probable Cause

Regarding the alternative issue of whether the affidavit supporting the tracking warrant provided sufficient corroboration to render the SOI reliable, Defendant essentially asserts two related arguments: (1) "[the] motives [of the SOI to falsify the information provided to law enforcement] were not fully revealed in the search warrant application," and (2) "[t]he few facts that law enforcement corroborated here did not rise to the[] level [of establishing the reliability of the SOI's other information]." (Dkt. No. 30, at 4-5.)

However, with regard to Defendant's first argument, the Court finds that the affidavit in question sufficiently disclosed to Chief Magistrate Judge Danks the potentially dubious motives of the SOI. (Dkt. No. 26, Attach. 4, at ¶¶ 7, 15 & nn.1, 4.) Moreover, the affidavit stated that law enforcement had already independently corroborated at least some of the information from the SOI. (*See, e.g.,* Dkt. No. 26, Attach. 4, at ¶¶ 8, 19-20 & nn.3, 5.) Finally, again, the Court agrees with each of the other reasons offered by the Government for finding the SOI reliable: (a) the fact that the SOI was a face-to-face source rather than an anonymous "tipster," (b) the fact that the SOI's information was based on his or her firsthand knowledge, (c) Defendant's relevant criminal history, and (d) the affiant agent's knowledge about practices engaged in by those involved in drug trafficking. *See, supra,* Parts I.B.2. and I.B.6. of this Decision and Order.

---

examination, and the Court thus could not form an opinion as to his credibility.").

With regard to Defendant's second argument, basically, Defendant argues that the Court should reject as uncorroborated an SOI's assertion that drugs were being transported in a certain vehicle (sufficient to constitute probable cause for a search warrant to place a tracking device on that vehicle), despite the following two facts. First, the SOI had demonstrated to the affiant agent that he/she had personal knowledge of Defendant's daily activities (as a result of a decade-long relationship with Defendant that was close enough to result in a criminal charge). (Dkt. No. 26, Attach. 4, at ¶¶ 7-8, 12-15, 19-20 & nn.1, 3, 4.) Second, before the issuance of the warrant, law enforcement had independently corroborated three related facts asserted by the SOI: (a) that a certain vehicle owned by Defendant's Philadelphia-based associate would have a Pennsylvania license plate, (b) that Defendant would often drive that vehicle in Binghamton, and (c) that once or twice a week Defendant would drive that vehicle back and forth between Binghamton and Philadelphia (a known local source of drugs). (*Id.*)[5]

As a result, the Court respectfully disagrees with Defendant's argument: under the circumstances, there is sufficient corroboration. Specifically, law enforcement's corroboration of three related facts offered by the SOI constituted indicia of reliability sufficient to permit Chief Magistrate Judge Dancks to draw a reasonable inference of the truth of the fourth fact

---

[5] The Court notes that it rejects Defendant's argument that the above-stated third related fact was not sufficiently corroborated because the search warrant application admits that license plate readers only detected a vehicle associated with Defendant in Pennsylvania on one occasion between August 2025 and November 5, 2025. (Dkt. No. 49, at 2-3.) For the sake of brevity, the Court will not linger on (1) the evidence that, on a second occasion (i.e., on October 2, 2025), Defendant was tracked heading westbound in the direction of interstate 86 which leads to interstate 81 South toward PA, and (2) the evidence that, based on the affiant's training and experience, license-plate readers may not show the full travel history of a vehicle because experienced drug traffickers may vary their route (including by taking less travelled roads that do not have license-plate reader technology). (Dkt. No. 26, Attach. 4, at 11-12 & n.5 [attaching page "8" of Affidavit in Support of Search Warrant Application].) More important, the Court finds that the one occasion admitted to by Defendant to sufficiently corroborates, or partially corroborates, the above-stated third related fact.

offered by the SOI (specifically, that there would be drugs in the vehicle). Indeed, even without this corroboration, the tip would have been self-corroborating given the number and specificity of relevant details contained in it. *See New York v. Elwell*, 50 N.Y.2d 231, 233-242 (N.Y. 1980) (explaining that, where an informant does not expressly state the basis of knowledge, the informant's tip itself may establish firsthand knowledge if it is sufficiently detailed and specific).

In any event, even if this Court were to find the warrant infirm, the Court would find that exclusion of evidence of the car stop would be unjustified, because nothing in the warrant would preclude a law enforcement officer from believing in good faith that the warrant was properly issued by Chief Magistrate Judge Dancks.

**C. Whether the Search Was Justified by the Inventory Exception**

Regarding whether the search was justified by the inventory exception to the warrant requirement, the Court has found no reason from Defendant's reply memorandum of law, the evidentiary hearing, or Defendant's post-hearing brief to disagree with the Government's argument that the evidence was discovered during a lawful inventory search and as part of the officers' community caretaking function. *See, supra,* Parts I.B.2. and I.B.6. of this Decision and Order.

In particular, with regard to Defendant's argument that the vehicle need not have been towed at all, generally, state law enforcement need not wait for an owner from another state to come pick up their abandoned vehicle from the side of a busy interstate highway – at least, not law enforcement in New York State in even early December. Rather, such law enforcement may simply have the vehicle towed, which they did. Of course, part of that towing includes the bailee (here, law enforcement) inventorying all the items inside the vehicle (preferably before

taking possession). "Such a search is not done to detect crime or to serve criminal prosecutions. It is done for quite different reasons: (1) to protect the owner's property while it is in police custody; (2) to protect the police against spurious claims of lost or stolen property; and (3) to protect the police from potential danger." *United States v. Lopez*, 547 F.3d 364, 369 (2d. Cir. 2008). Stated simply, had the owner of the vehicle been in the passenger's seat at the time of the stop, then there would have been no need for towing and inventorying. But he was not.

With regard to Defendant's argument about the location and nature of the inventorying, there are no rigid timing or location requirements under the Fourth Amendment, because those requirements would do nothing to safeguard the interests protected by the Fourth Amendment. *See Lopez*, 547 F.3d at 371 ("While the Supreme Court referred to the need for a standardized policy, we do not think the Court meant that every detail of search procedure must be governed by a standardized policy. We doubt, for example, that the Court intended a requirement of standardized policy as to the order in which different parts of the car are searched, or whether officers performing the search need to report the results on a standardized form, or whether the search should be conducted by the officers responsible for the impoundment decision. A standardized policy governing those questions would do nothing to safeguard the interests protected by the Fourth Amendment.").

As for Defendant's argument that the real purpose of the inventorying was a search for drugs, as explained above in Part II.B. of this Decision and Order, such a search may properly have dual objectives as long as one of those objectives is a need for an inventory due to a valid towing. *See Lopez*, 547 F.3d at 372 ("[I]f a search of an impounded car for inventory purposes is conducted under standardized procedures, that search falls under the inventory exception to the

warrant requirement of the Fourth Amendment, *notwithstanding a police expectation that the search will reveal criminal evidence*. If good faith is a prerequisite of an inventory search, the *expectation and motivation to find criminal evidence* do not constitute bad faith.") (emphasis added).

**D. Whether the Court Should Consider Defendant's Untimely Motion**

Finally, regarding whether Defendant has established good cause for the filing of an untimely motion to suppress challenging the duration of the stop under *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), generally, good cause for an untimely motion to suppress does not exist where defense counsel had all the information necessary to bring motion to suppress in a timely manner. *See, e.g., United States v. Robinson*, 16-CR-0545, 357 F.Supp.3d 221, 223 (E.D.N.Y. 2019) (holding that good cause under Fed. R. Crim. P. 12[b][3] for filing an untimely motion to suppress based on the Defendant's false arrest accusations did not exist where, contrary to defense counsel's argument that he only recently discovered convincing and credible evidence in the form of computer records showing that the police had lied about the factual basis for his charge of false personation, the court found that defense counsel "possessed full knowledge of the basis for making the motion when he made his decision but chose not to present it based on his assessment of its likelihood of success," and in particular, "Defendant knew of the basis of his suppression motion at the moment of his arrest – i.e., the issue became ripe the second the [police] arrested him for false personation after he allegedly gave them the correct date of birth").[6]

---

6 *See also United States v. Mayer*, 63 F.4th 680, 683-84 (8th Cir. 2023) (holding that defendant did not show "good cause" for district court to consider his untimely pretrial suppression motion to suppress evidence seized from his motel room, where six months before trial the government had given defendant an exhibit list that identified the motel room items, and three weeks before trial the government had filed its trial brief also previewing the motel room

Here, the Court finds that defense counsel had all the information necessary to bring the referenced motion by the deadline for such motions. Moreover, the Court finds that, because of defense counsel's undue delay, the Government was not prepared, before and during the evidentiary hearing, to substantively respond to a challenge of the duration of the stop under *Rodriguez v. United States*. (Dkt. No. 43, at 2.) For all of these reasons, the Court finds that defense counsel has not shown good cause for the filing of an untimely motion in limine.

In any event, even if the Court were to consider the merits of a challenge under *Rodriguez v. United States*, the Court would find that challenge to be without merit due to the duration of, and reasons for, the stop. Defendant makes much of the fact that it was not until approximately 15 minutes into the stop that the officer started to write Defendant a ticket. However, Defendant fails to acknowledge the fact that, generally, the moment that an officer learns both that the sole occupant of working motor vehicle parked on the side of a busy highway lacks a valid driver's license and that the vehicle belongs to an out-of-state individual, the officer obtains sufficient grounds to prolong the stop of the occupant until at least the time that the vehicle is removed. Here, the officer learned these facts moments into the stop. As a result, based on the current record, Defendant's 15-minute argument lacks merit.

---

findings, so defendant had ample time and notice to renew his suppression motion, but did not do so until the first day of trial); *United States v. Andres*, 960 F.3d 1310, 1316 (11th Cir. 2020) ("[T]he law is clear that no good cause exists if the defendant had all the information necessary to bring a Rule 12(b) motion before the date set for pretrial motions, but failed to file it by that date.") (internal quotation marks omitted); *United States v. Wilson*, 115 F.3d 1185, 1191 (4th Cir.1997) (holding good cause was lacking when "'[t]he record show[ed] that sufficient information was available to defense counsel before trial that would have enabled him to frame

For all of these reasons, Defendant's motion is denied.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to suppress (Dkt. No. 23) is **DENIED**.

Dated: September 14, 2026
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

his [argument for] suppression").